# EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff–Appellant,

v.

# FLASHER COMPANY, INC., Defendant–Appellee.

## No. 91–6279.

United States Court of Appeals, Tenth Circuit.

Dec. 29, 1992.

---

John F. Suhre, of E.E.O.C., Washington, DC (Donald R. Livingston, General Counsel, Gwendolyn Young Reams, Associate General Counsel, and Carolyn L. Wheeler, Asst. General Counsel, on the brief), for plaintiff-appellant.

John B. Hayes of Looney, Nichols, Johnson & Hayes, Oklahoma City, OK, for defendant-appellee.

Before BALDOCK and EBEL, Circuit Judges, and LUNGSTRUM, District Judge.[*]

EBEL, Circuit Judge.

█ This Title VII case is before us on appeal from a district court judgment that the Appellant had failed to prove at trial that his employment termination resulted from disparate treatment based on national origin. The EEOC argues on appeal that it proved actionable discrimination when it established, and the district court found, that the defendant disciplined less severely several non-minority employees who had committed infractions that were of equal seriousness. However, the district court further held that the plaintiff had failed to prove that these differences in treatment were the result of intentional discrimination on the basis of a protected class. Contrary to the position urged upon us by the EEOC, we hold that a mere finding of disparate treatment, without a finding that the disparate treatment was the result of intentional discrimination based upon protected class characteristics, does not prove a claim under Title VII. Accordingly, we affirm.

## I. Facts

Edward Perez and a coworker, Ronald Chambers, were involved in an altercation in December 1987 while travelling in a truck owned by their employer, the Flasher Company ("Company"). While en route to a job site, the two men began to quarrel and exchanged racial epithets. Perez struck Chambers, who was driving, and the car swerved to the side of the road. Chambers later drove to the next town and called his supervisor to report the incident. Per-

---

[*] The Honorable John W. Lungstrum, District Judge, United States District Court for the District of Kansas, sitting by designation.

ez refused to follow the supervisor's instructions to wait for someone to pick him up. He proceeded instead to the job site with Chambers. Perez was picked up at the job site by a supervisor and returned to the Company's office. Supervisor Hodges and Vice President Riebel later fired Perez.

The Equal Employment Opportunity Commission brought an employment discrimination action as a result of the firing. It alleged that the Company fired Perez because of his national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1).[1] The EEOC compared the incident involving Perez, an Hispanic, with five other instances where the EEOC alleged that the Company handed out lesser punishment to non-minorities who had committed infractions of comparable or greater seriousness.[2] The EEOC cited the following incidents for comparison:

1. *Chambers accident:* A verbal reprimand was given to two employees after they caused damage to a Company truck. The employees had been drinking beer and a non-employee passenger was in the truck in violation of Company rules.

2. *Green/Langrehr altercation:* An employee was suspended without pay for pushing a fellow employee in the course of horseplay. The push caused the latter employee to fall against a truck and separate his shoulder.

3. *Lashley/motorist incident:* An employee was terminated for his involvement in an altercation with a motorist while on duty. The termination was later revoked when the employee apologized to the motorist and paid his medical bills, and the motorist accepted partial blame for the incident.

4. *Ray/Schlittenhardt altercation:* A verbal reprimand and warning were given to two employees for fighting. The altercation took place off Company property and off Company time. The employees were warned that they would be terminated if they were caught fighting again.

5. *Barton DUI incident:* A reprimand and demotion was given to an employee who was charged with driving a Company truck during non-working hours while under the influence of alcohol.

The district court found that the infractions in incidents 1, 3, and 5 above were "at least as serious" as the incident involving Perez. Because the non-minority employees involved in those incidents were disciplined less seriously than Perez, the district court concluded that the EEOC made out a prima facie case of disparate treatment under the first prong of the test established in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[3]

The district court next concluded that the Company had articulated a facially nondiscriminatory reason for its decision to terminate Perez. The reason given was that Perez had violated a company rule that an employee inflicting personal injury on another employee in the course of company business will be subject to immediate dismissal. The district court found that Per-

---

1. Section 703(a)(1) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1), provides:
 "It shall be an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...."

2. The EEOC is asserting a disparate treatment case—not a disparate impact case. See *Teamsters v. United States,* 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 1854–55 n. 15, 52 L.Ed.2d 396 (1977) for a discussion of some of the differences between the two theories. *See also* Larson, Employment Discrimination § 5021(a) at

10–6—10–8. This opinion addresses only a disparate treatment claim under Title VII.

3. The district court recognized that it was no longer appropriate to apply the three-prong analysis established in *McDonnell Douglas* once the case had proceeded through trial. However, it addressed the issue of whether the EEOC had established a prima facie case to provide a more complete analysis of the evidence. *See United States Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 255 n. 10, 101 S.Ct. 1089, 1095 n. 10, 67 L.Ed.2d 207 (1981); *Ortega v. Safeway Stores, Inc.,* 943 F.2d 1230, 1237 (10th Cir.1991).

ez's insubordination in refusing to stay put after the incident was reported was a secondary reason for his termination.

Finally, the district court concluded that the EEOC had failed to prove intentional discrimination against Perez because of his national origin, notwithstanding the incidents of disparate treatment between him and non-minority· employees who had committed infractions that were at least as serious. Hence, the district court entered judgment for the defendant. We affirm.

## II. Legal Analysis

### A. *General Framework.*

■ The framework for analyzing claims under Title VII is well established. This Circuit has adopted the burden-shifting format set out in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). As step one, the plaintiff is required to prove a prima facie case. In a disparate treatment claim relating to termination for violation of a work rule, a prima facie case is established once the plaintiff shows "(i) that [the plaintiff] belongs to a [protected class]; (ii) that he was discharged for violating a work rule ...; and (iii) that similarly situated non-minority employees ... were treated differently." *McAlester v. United Air Lines,* 851 F.2d 1249, 1260 (10th Cir.1988). The infractions giving rise to the comparison need not involve exactly the same offenses; they need only be of comparable seriousness. *Id.* at 1261.

■ Once the plaintiff has established a prima facie case, the burden of production shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell,* 411 U.S. at 802, 93 S.Ct. at 1824. The defendant's burden is merely to articulate

through some proof a facially nondiscriminatory reason for the termination;[4] the defendant does not at this stage of the proceedings need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094; *Curry v. Oklahoma Gas & Elec. Co.,* 730 F.2d 598, 601–602 (10th Cir.1984); *Farmer v. Colorado & Southern Ry. Co.,* 723 F.2d 766, 768–69 (10th Cir.1983); Mack A. Player, Employment Discrimination Law, § 5.44b(3) at 394–95 (1988). However, the proffered · reason for the action taken against the minority employee must be reasonably specific and clear. *Burdine,* 450 U.S. at 258, 101 S.Ct. at 1096.

■ Once the defendant h‥s set forth a facially nondiscriminatory reason for the termination, the plaintiff then assumes the normal burden of any plaintiff to prove his or her case at trial. Here, the EEOC was required to prove that Perez's termination was the result of intentional discrimination based on Perez's national origin. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *Furnco Construction v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978); *Carey v. United States Postal Service,* 812 F.2d 621, 625–26 (10th Cir.1987). At this point in the proceeding, which is often referred to as the third step in the *McDonnell Douglas* analysis, the presumption in plaintiff's favor that arose from the establishment of a prima facie case simply "drops from the case." *Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10; *Curry,* 730 F.2d at 601.

■ The only purpose for the three-step framework in *McDonnell Douglas* is

---

**4.** Often courts articulate this simply as a "nondiscriminatory" reason. *See, e.g., Drake v. City of Fort Collins,* 927 F.2d 1156, 1160 (10th Cir. 1991); *McAlester v. United Air Lines, Inc.,* 851 F.2d 1249, 1260 (10th Cir.1988). We have chosen to use the phrase "facially nondiscriminatory" because this stage of the analysis only requires the defendant to articulate a reason for the discipline that is not, on its face, prohibited by Title VII. That is, an employer could not advance as the reason for more seriously disci-

plining the plaintiff that he or she was black. No examination is made at this point as to whether the articulated reason was a pretext for illegal discrimination or whether such reasoning was unequally applied against this particular plaintiff. Finally, we use the word "nondiscriminatory" to refer only to the classes of people protected by Title VII—classes relating to "race, color, religion, sex, or national origin." Discrimination based upon other characteristics or factors is not prohibited by Title VII.

to provide a basic "order of presentation of proof" so that the controversy can be increasingly brought into focus. *See Carey,* 812 F.2d at 623. It was never intended to provide a mechanistic approach to what ultimately becomes a straightforward trial about motive. *See United States Postal Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983); *Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10; *Ortega v. Safeway Stores, Inc.,* 943 F.2d 1230, 1237 (10th Cir. 1991). In the final analysis, the court is required to weigh all the evidence and to assess the credibility of witnesses in order to determine whether the plaintiff was the victim of intentional discrimination based upon protected class characteristics. *See Aikens,* 460 U.S. at 715–16, 103 S.Ct. at 1481–82; *Pullman–Standard v. Swint,* 456 U.S. 273, 286–88, 102 S.Ct. 1781, 1789–90, 72 L.Ed.2d 66 (1982); *Pitre v. Western Electric Co.,* 843 F.2d 1262, 1266 (10th Cir.1988). The plaintiff can prevail either directly by proving that the employer acted with a discriminatory motive or indirectly by showing that the stated reason for the discharge was a "pretext for the sort of discrimination prohibited by [Title VII]"— that is, that the facially nondiscriminatory reason was "a cover-up for a racially discriminatory decision." *McDonnell Douglas,* 411 U.S. at 804–05, 93 S.Ct. at 1826.

■ The ultimate finding of whether there was intentional discrimination against a protected class is considered a question of fact for the district court to decide. *Pullman–Standard,* 456 U.S. at 287–88, 102 S.Ct. at 1789–90. Appellate review is under the clearly erroneous standard. *Pitre,* 843 F.2d at 1266; *Silberhorn*

*v. General Iron Works,* 584 F.2d 970, 971 (10th Cir.1978).

B. *Step Two in the McDonnell Douglas Analysis Merely Requires the Defendant to Articulate by Evidence a Facially Nondiscriminatory Reason for the Termination. No Comparative Justification is Required.*

■ The EEOC mistakenly assumes that a *defendant* must show a nondiscriminatory reason for the *difference in treatment* between the plaintiff and the non-minority comparison employees in order to satisfy step two of the *McDonnell Douglas* analysis. The EEOC argues that simply saying Perez was fired for violating a rule was legally insufficient without addressing how that rule was applied to others. The EEOC is mistaken as this misapprehends both the purpose for step two of the *McDonnell Douglas* analysis and erroneously seeks to put the burden on the defendant to prove absence of illegal discrimination rather than requiring the plaintiff to prove such discrimination.[5]

Step two only requires that the defendant explain its actions against the plaintiff in terms that are not facially prohibited by Title VII. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824 (holding that the defendant must "articulate some legitimate, nondiscriminatory reason for the employee's rejection"); *Board of Trustees v. Sweeney,* 439 U.S. 24, 25, 99 S.Ct. 295, 295–96, 58 L.Ed.2d 216 (1978) ("[U]nder *Furnco* and *McDonnell Douglas* the employer's burden is satisfied if he simply 'explains what he has done' or 'produc[es] evidence of legitimate nondiscriminatory reasons.' ")

---

5. The EEOC's assertion that the employer must justify any disparities in treatment between employees may very well stem from an erroneous belief that the purpose of the second step is to establish a direct clash with the first step. That is, the EEOC asserts that the discrepancies established in step one must be explained in step two because only then will there be an answer to the evidence set forth in the first step. This insistence on direct clash is misplaced. The defendant need not rebut the *evidence* established under the first step; the defendant is required to rebut the *inference* that he acted out

of discriminatory animus. However, to rebut this inference the defendant need only articulate a facially nondiscriminatory reason for the discipline.

The burden under the second step of *McDonnell Douglas,* properly conceived, does establish clash. However, that clash comes in the third step of the analysis where the fact-finder is charged to determine which of the reasons for the defendant's actions it believes: the discriminatory reason advanced by the plaintiff or the reasons proffered by the defendant under step two.

(quoting *Sweeney,* 439 U.S. at 28, 29, 99 S.Ct. at 297, 298 (Stevens, J., dissenting)); *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094 ("[T]he defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection."); *Burdine,* 450 U.S. at 257, 101 S.Ct. at 1096 ("[T]he employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus."). It does not require the defendant to explain any differences in treatment between the plaintiff and others. In other words, step two is not a comparative step.[6] It is only *unexplained discipline,* not *unexplained disparities,* that will justify judgment in favor of the plaintiff under the second prong of *McDonnell Douglas.*

The articulation of a facially, nondiscriminatory reason under the second step defines the parameters of the trial, as the plaintiff then knows the precise reason that he or she may try to show is only a pretext for an illegal discriminatory motive. By articulating the reasons for the plaintiff's termination, the defendant eliminates a myriad of possible reasons that would otherwise have to be addressed. That is, we require the defendant to identify and enunciate the reasons for the termination at the outset, because there is no limit to the potential number of reasons that could be raised at trial. Otherwise litigation of discrimination claims would be needlessly confused and delayed.

The EEOC's position would force the defendant in a Title VII case to address the

question of animus at the second stage before the plaintiff is required to put on his or her proof of discriminatory animus at stage three. It would, in essence, ask the defendant to disprove plaintiff's case before plaintiff is required to make the affirmative case. This would be an improper burden to place upon the defendant and would undermine the system of proof and burdens established by *McDonnell Douglas.* The presumption arising under the first prong of *McDonnell Douglas* is a relatively weak inference that corresponds to the small amount of proof necessary to create it. *See* Barbara Schlei & Paul Grossman, Employment Discrimination Law at 1316–17 (2d ed. 1983). Under the *McDonnell Douglas* scheme, as properly applied, the level of proof necessary to rebut that presumption in step two is also small. *See id.* The reason for any disparity in treatment is to be addressed in the third stage of the *McDonnell Douglas* test. To force the defendant to answer that question in the second stage perverts the order of presentation of proof and the allocation of burdens of proof conceived under the *McDonnell Douglas* framework.

 In this case the Company offered evidence that it terminated Perez because of Perez' altercation with Chambers during which Perez struck Chambers while Chambers was driving, causing the truck to swerve off the road. This is a facially nondiscriminatory reason for the action taken against the plaintiff. Thus, the Company's reason fully satisfies step two of *McDonnell Douglas.*

---

**6.** In the course of articulating its reason for taking action against the plaintiff, a defendant *may* choose to explain its rationale in comparative terms. For example, in *Drake v. City of Fort Collins,* 927 F.2d 1156, 1160 (10th Cir.1991), the defendant explained that it enforced a two-year college requirement against a minority applicant that was not enforced against several white applicants because the white applicants had been promised interviews before the two-year college requirement was adopted. However, at step two of the *McDonnell Douglas* analysis, such a comparative analysis is not necessary. *Burdine,* 450 U.S. at 256–58, 101 S.Ct. at 1095–96; *McAlester,* 851 F.2d at 1260–61.

Depending upon the reasoning advanced by the defendant, courts have sometimes articulat-

ed the second step in *McDonnell Douglas* as a requirement that the defendant provide a "nondiscriminatory explanation for the apparently discriminatory result." *McAlester,* 851 F.2d at 1260; *see Drake,* 927 F.2d at 1160. However, in a more precise manner, step one has established the "apparently discriminatory result" and in step two the defendant need only advance a facially nondiscriminatory reason for its action against the plaintiff; i.e., a reason which does not, on its face, violate Title VII. If that reason is applied only against minorities, has a disparate impact upon minorities, or is otherwise a sham, that comparative analysis occurs under step three where the plaintiff has the burden of proof.

The EEOC claims that this is not a sufficient explanation because it does not explain why lesser sanctions were imposed against non-minority employees who engaged in conduct that was at least as serious. In essence, the EEOC is arguing that the articulated explanation for terminating Perez is a pretext for illegal discrimination because comparable discipline was not administered against non-minorities. However, that assertion is for the plaintiff to prove in step three; it is not for the defendant to disprove in step two. *See Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095 ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."); *Felton v. Trustees of California State Univ. and Colleges*, 708 F.2d 1507, 1508–09 (9th Cir. 1983) (holding that court's analysis that effectively shifted burden of proof regarding motive to defendant was erroneous); *Grano v. Department of Dev.*, 637 F.2d 1073, 1080 (6th Cir.1980) ("[T]he employer is not under a burden of proving absence of discriminatory motive.").

C. *Unexplained Disparity[7] in Treatment Between a Minority Employee and Non–Minority Employees Does Not Necessarily Establish Illegal Discrimination As A Matter Of Law.*

 Title VII makes it unlawful for "an employer ... to fail or refuse to hire or ... to discriminate against any individual with respect to ... employment, *because of such individual's race, color, religion, sex, or national origin....*" 42 U.S.C. § 2000(e)–2(a)(1) (emphasis added). Title VII does *not* make unexplained differences in treatment per se illegal nor does it make inconsistent or irrational employment practices illegal. It prohibits only intentional discrimination *based upon* an employee's protected class characteristics.

Human relationships are inherently complex. Large employers must deal with a multitude of employment decisions, involving different employees, different supervisors, different time periods, and an incredible array of facts that will inevitably differ even among seemingly similar situations. The law does not require, nor could it ever realistically require, employers to treat all of their employees all of the time in all matters with absolute, antiseptic, hindsight equality.

What the law does require is that an employer not discriminate against an employee on the basis of the employee's protected class characteristics. Discrimination based on race, color, religion, sex, or national origin is not only wrong, it is illegal. Proof of illegal discrimination *begins* in step one of the *McDonnell Douglas* analysis with proof that a protected person has been treated less favorably than other employees in comparable situations. But it does not end there. *See Furnco*, 438 U.S. at 576, 98 S.Ct. at 2949. If that step, by itself, established ultimate liability there would be no need for steps two and three. As pointed out above, in step two the employer must offer a facially nondiscriminatory explanation for its action against the plaintiff. If the defendant fails to offer such a reason, the defendant loses. Assuming a facially non-discriminatory reason is advanced for the discipline against the plaintiff, the matter then moves to step three, where the plaintiff must prove that the disparity in treatment was based upon the plaintiff's race, religion, sex, or national origin rather than upon either a valid nondiscriminatory reason or upon no particular reason at all.

 It is error to assume, as does the EEOC, that differential treatment between a minority employee and a non-minority employee that is not explained by the employer in terms of a rational, predetermined business policy *must* be based on

---

7. Again, it is important to keep in mind the distinction between the reason for the *discipline* taken against plaintiff, which the defendant must explain as part of its step two burden, and the reason for any *disparity* between the way that plaintiff was treated and the way that comparison, non-minority employees were treated. This section of the opinion addresses only the issue of who has the burden of proving the reason for the *disparity of treatment* between the plaintiff and other employees.

illegal discrimination because of an employee's protected class characteristics. Such an assumption is neither correct under the law nor is it an accurate reflection of reality. *Furnco*, 438 U.S. at 579, 98 S.Ct. at 2951 ("A *McDonnell Douglas* prima facie showing is not the equivalent of a factual finding of discrimination...."). Differences in treatment are inevitable, and even irrational or accidental differences of treatment occur in most business organizations of any size. Differential treatment not premised on rational business policy may in some instances support an inference of illegal discriminatory intent, and a fact finder may, upon an appropriate record, infer that an illegal discriminatory motive lies behind otherwise irrational business conduct that disadvantages a protected status employee. However, such a conclusion is not compelled as a matter of law. Sometimes apparently irrational differences in treatment between different employees that cannot be explained on the basis of clearly articulated company policies may be explained by the fact that the discipline was administered by different supervisors,[8] *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989), or that the events occurred at different times when the company's attitudes toward certain infractions were different,[9] *Grohs v. Gold Bond Bldg. Products*, 859 F.2d 1283, 1287 (7th Cir.1988), *cert. denied*, 490 U.S. 1036, 109 S.Ct. 1934, 104 L.Ed.2d 405 (1989), or that the individualized circumstances surrounding the infractions offered some mitigation for the infractions less severely punished,[10] *Brazer v. St. Regis Paper Co.*, 498 F.Supp. 1092, 1098 (M.D.Fla.1980), or even that the less severely sanctioned employee may be more valuable to the company for nondiscriminatory reasons than is the other employee, *Langland v. Vanderbilt Univ.*, 589 F.Supp. 995, 1008–09 (M.D.Tenn.1984).

Other times, no rational explanation for the differential treatment between the plaintiff and the comparison employees may be offered other than the inevitability that human relationships cannot be structured with mathematical precision, and even that explanation does not compel the conclusion that the defendant was acting with a secret, illegal discriminatory motive. *See Gray v. University of Arkansas*, 883 F.2d 1394, 1401 (8th Cir.1989) ("An employer's articulated reason for terminating a member of a protected class need not be a sound business reason, or even a fair one.... The only relevant inquiry is whether the decision was based on [a protected status]."). *Cf. Furnco*, 438 U.S. at 577, 98 S.Ct. at 2949–50 (implying that irrational disparate treatment is not inevitably premised upon consideration of impermissible discriminatory factors). Under Title VII, the defendant does not have to prove why the differential treatment occurred; it is up to the plaintiff to prove why it did occur—and to prove that it was caused by intentional discrimination against a protected class. If, after trial, no motivation or reason for the differential treatment has been established by either side to a preponderance of the evidence, the judgment must be for the defendant.

Of course, the plaintiff may argue that irrational or unexplained differential treatment is secretly motivated by illegal discrimination, and if the plaintiff persuades the fact finder of that, the plaintiff will satisfy that portion of his or her burden of proof in a Title VII disparate treatment claim. *See Furnco*, 438 U.S. at 578, 98 S.Ct. at 2950. Indeed, even punishment administered for violating a valid, facially nondiscriminatory policy may be motivated by an illegal discriminatory intent, and if so, it is actionable under *McDonald v. San-*

---

**8.** In two of the three incidents that the district court found were of at least equal seriousness but that did not result in termination of the non-minority employee, the supervisor administering the discipline was different from the supervisor who administered discipline against Perez. Only the fifth incident, involving the Barton DUI incident, involved the same supervisor, Mark Hodges.

**9.** Here, the incidents used for comparison by the EEOC spanned a three-year time period.

**10.** The district court observed that, in the third incident involving the motorist, the motorist had admitted partial responsibility for the altercation and the employee had offered complete restitution for the injury.

ta Fe Trail Transportation Co., 427 U.S. 273, 283, 96 S.Ct. 2574, 2580, 49 L.Ed.2d 493 (1975). However, it is the province of the fact finder to determine what inferences should fairly be drawn from the facts. *Pullman–Standard,* 456 U.S. at 289–90, 102 S.Ct. at 1790–91. (Rejecting a per se rule of presuming illegal discrimination in the absence of proof of actual discriminatory motive). An inference of illegal discrimination based upon protected class characteristics is not legally compelled by irrational or accidental disparate treatment between minority and non-minority employees.

Indeed, even a finding that the reason given for the discipline was pretextual, does not compel such a conclusion, unless it is shown to be a pretext *for discrimination against a protected class.* A pretextual reason may be advanced to conceal a wide range of possible motivations, but Title VII only reaches pretextual cases where the advanced reason is shown to be a pretext for a discriminatory animus based upon a person's protected status. *Benzies v. Illinois Dep't of Mental Health & Developmental Disabilities,* 810 F.2d 146, 148 (7th Cir.), *cert. denied,* 483 U.S. 1006, 107 S.Ct. 3231, 97 L.Ed.2d 737 (1987). *Burdine* makes clear that the plaintiff must show not merely that the proffered reasons are pretextual but that they are "a pretext *for discrimination.*" 450 U.S. at 253, 101 S.Ct. at 1093 (emphasis added); *see Galbraith v. Northern Telecom, Inc.,* 944 F.2d 275, 283 (6th Cir.1991) ("proving that an employer's proffered reason for discharging an employee is a pretext does not establish that it is a pretext for racial discrimination"), *cert. denied,* —— U.S. ——, 112 S.Ct. 1497, 117 L.Ed.2d 637 (1992); *Holder v. City of Raleigh,* 867 F.2d 823, 828 (4th Cir.1989) ("[A] finding that the reasons proffered by defendants were, in some general sense, 'unworthy of credence' does not of itself entitle plaintiff to prevail.... The reason for their lack of credence must be the underlying presence of proscribed discrimination.") (citation omitted); *Pollard v. Rea Magnet Wire Co.,*

Inc., 824 F.2d 557, 559 (7th Cir.) (distinguishing pretext, pretext for discrimination, and mistakes or irregularities), *cert. denied,* 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987). Merely finding that people have been treated differently stops short of the crucial question: *why* people have been treated differently. While comparing specific disciplinary actions can give rise to an inference of illegal discrimination, it need not do so. Proffered reasons may be a pretext for a host of motives, both proper and improper, that do not give rise to liability under Title VII.

A public employer may feel bound to offer explanations that are acceptable under a civil service system, such as that one employee is more skilled than another, or that 'we were just following the rules.' The trier of fact may find, however, that some less seemly reason—personal or political favoritism, a grudge, random conduct, an error in the administration of neutral rules—actually accounts for the decision. Title VII does not compel every employer to have a good reason for its deeds; it is not a civil service statute.

*Benzies,* 810 F.2d at 148.

■ Here, the district court found that the EEOC had failed to prove that the defendant terminated Perez because of his national origin. In addition, the district court explicitly found that the reason given for terminating Perez—that he struck a co-employee while he was driving a car, causing the car to go into a ditch—was not a pretext. Findings of Fact and Conclusions of Law, No. CIV–90–1600–P at 30–31. That reason is not prohibited by Title VII.

Although the district court found that several of the comparison incidents involved conduct at least as serious as Perez's, it further found that the discrepancies in punishment administered in those situations did not give rise to an inference of illegal discrimination based on national origin.[11] Moreover, in this case the defendant did not stand solely on the weakness of plaintiff's case as it might have done. Instead, it chose to put on its own rebuttal

**11.** The district court's use of the term "inference" under both the first and third prongs of *McDonnell Douglas* has created some confusion.

The court properly concluded that the EEOC had established a prima facie case which did give rise to an inference of discrimination un-

evidence to explain the discrepancies. It explained two of the comparable incidents involving less severe punishment on the ground that they involved a different supervisor. The third comparison incident (the Barton DUI incident) the defendant sought to distinguish on the ground that *it perceived* the incident to be less serious. The district court disagreed with that conclusion when it found that the Barton DUI incident was "at least as serious" as the offense for which Perez was terminated. However, the defendant is not on trial for making an erroneous judgment as to whether or not Perez's infraction was more serious than the Barton DUI infraction.[12] The defendant is on trial for acting against Perez on the basis of intentional discrimination based on Perez's national origin. The district court can, and here did, disagree with the defendant's conclusion about the relative seriousness of the two incidents without thereby finding that the differential treatment was motivated by an illegal discriminatory motivation.[13]

Here, upon all of the evidence, the district court concluded that the EEOC failed to prove by a preponderance of the evidence that Perez was terminated because of his national origin. We have reviewed the record before us and we conclude that this finding was not clearly erroneous. The judgment of the district court is therefore AFFIRMED.

---

der the first prong of *McDonnell Douglas.* However, once the Company came forward with a facially nondiscriminatory reason for Perez's termination, that inference vanished. Then, in its ultimate assessment of the evidence under the third prong, the court was left to determine whether the EEOC had proven, by a preponderance of the evidence, that Perez was the victim of intentional discrimination. Under this higher standard of proof the court concluded that the comparison cases did not give rise to an inference of discrimination. We find no conflict between this conclusion and the conclusion reached under the first prong. *See Furnco,* 438 U.S. at 579, 98 S.Ct. at 2950–51. Under the third prong, the district court might have more clearly stated that the comparison cases did not establish by a preponderance of the evidence the fact of intentional discrimination. However, we understand the court to mean that in its assessment of the evidence the comparison cases, although showing disparate treatment, were not sufficient to show intentional discrimination against Perez because of his national origin.

12. In fact, a mistaken belief can be a legitimate reason for an employment decision and is not necessarily pretextual. *Nix v. WLCY Radio/Ra-*

*hall Communications,* 738 F.2d 1181, 1186 (11th Cir.1984) (" '[I]f an employer applies a rule differently to people it believes are differently situated, no discriminatory intent has been shown.' ") (*quoting Chescheir v. Liberty Mutual Ins. Co.,* 713 F.2d 1142, 1148 (5th Cir.1983)); *Pollard,* 824 F.2d at 559–60; *Holder,* 867 F.2d at 829 ("A reason honestly described but poorly founded is not a pretext, as that term is used in the law of discrimination.... Bad or mistaken reasons for a decision may yet be non-discriminatory.").

13. The Appellant also objects to the district court reasoning that it was significant that some discipline had been handed down in the Barton DUI case. The Appellant claims that this reasoning would effectively preclude relief unless conduct of comparable seriousness goes totally *un*punished. The Appellant misreads the district court opinion. The district court did not decline to evaluate the Barton DUI incident because some punishment (albeit less severe) was administered there. Instead, the district court merely noted that the Barton DUI incident did not go unpunished and thus, the discrepancy between that incident and the Perez incident was not as stark as it would have been if Barton had received no punishment.