25 F.3d 1057
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Amin KHAN, Plaintiff-Appellant,
v.
AMERICAN AIRLINES, INC., a Delaware corporation, Defendant-Appellee.
 No. 92-5024.
 United States Court of Appeals,
Tenth Circuit.
 June 2, 1994.
 
 1
 Before ANDERSON and KELLY, Circuit Judges, and LUNGSTRUM,** District Judge.
 
 ORDER AND JUDGMENT[1]
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 3
 Plaintiff Amin Khan appeals from a judgment in favor of defendant American Airlines, Inc., and from an order denying his Fed.R.Civ.P. 59 motion for a new trial. Plaintiff argues the district court's findings are clearly erroneous, and the district court judge was biased. Finding no merit to either contention, we affirm.
 
 
 4
 Plaintiff is an adult male United States citizen of Pakistani national origin and descent. He was employed by defendant from August 30, 1966, until his discharge on August 9, 1988.
 
 
 5
 On June 22, 1988, defendant sent plaintiff and five other mechanics on a field trip to San Francisco, California. He returned on June 27, 1988, and soon thereafter submitted his expense statement to his supervisor. Out of a $500 cash advancement for out-of-pocket expenses, plaintiff claimed $464.73.
 
 
 6
 Upon reviewing his expense statement, defendant's supervisory personnel noticed that plaintiff's meal expenses seemed high. Paul Chapdelaine, an employee in defendant's labor relations department, obtained copies of menus from restaurants at which plaintiff claimed to have eaten and noticed that the prices on those menus were far lower than the expenses plaintiff claimed for meals.
 
 
 7
 Plaintiff was asked to attend a meeting to review his expense statement for the field trip. Defendant's personnel told him there were discrepancies and went over each meal and receipt. Plaintiff insisted the expenses were accurate. He claimed he ate steak and eggs with fruit and tea or milk at every meal. He was not shown the menus that Chapdelaine had obtained.
 
 
 8
 Plaintiff was asked to attend another meeting the next day. At the conclusion of that meeting, plaintiff was terminated for violating defendant's Rules and Regulations Nos. 16 and 34. Rule 16 provides that "[m]isrepresentation of facts or falsification of records is prohibited." Appellee's App. at 347. Rule 34 provides in part that "[d]ishonesty of any kind in relations with the Company ... will be grounds for dismissal." Id. An employee who violates Rule 34 is automatically terminated.
 
 
 9
 Before the arbitration of plaintiff's termination, defendant obtained the other part of the restaurant guest checks matching the receipts plaintiff submitted. In all instances, the amount reflected on these forms was less than the amount plaintiff claimed for the meal. Plaintiff maintained his innocence throughout the arbitration. The arbitrator found that plaintiff's termination was for just cause.
 
 
 10
 Plaintiff commenced the present action under Title VII of the Civil Rights Act of 1964, 42 U.S.C.2000e-2(a).[2] Following a bench trial, the court found that defendant was justified in concluding plaintiff knowingly submitted materially inaccurate claims for meals and that he was treated no differently than similarly situated employees. It concluded that plaintiff failed to prove defendant's proffered reason for termination was pretextual, and that plaintiff had not been the victim of unlawful discrimination.
 
 
 11
 In a Title VII disparate treatment case, a plaintiff can establish a prima facie case by proving that he is a member of a protected class, that he was discharged for violating a work rule, and that similarly situated non-minority employees were treated differently. EEOC v. Flasher Co., 986 F.2d 1312, 1316 (10th Cir.1992). Once the prima facie case is established, the employer bears the burden of articulating a legitimate, nondiscriminatory reason for the plaintiff's termination. Id. If the employer carries this burden of production, the presumption raised by the prima facie case drops from the case; the plaintiff bears the ultimate burden of proving he has been the victim of intentional discrimination. St. Mary's Honor Ctr. v. Hicks, 113 S.Ct. 2742, 2747-48 (1993). A plaintiff may establish that the articulated reason for his discharge is a pretext for discrimination by proving that comparable discipline was not administered against non-minorities. Flasher, 986 F.2d at 1319. However, proof of differential treatment between minority and non-minority employees does not compel a finding of discrimination. Id. at 1320.
 
 
 12
 Plaintiff challenges the district court's findings. He points to circumstantial evidence which, he claims, proves that defendant discriminated against him. Whether there was intentional discrimination is a question of fact reviewed under the clearly erroneous standard. Sanchez v. Philip Morris Inc., 992 F.2d 244, 247 (10th Cir.1993). We may not reverse if the district court's account of the evidence is plausible. Id. Consideration of plaintiff's circumstantial evidence does not persuade us the district court's findings are clearly erroneous.
 
 
 13
 Plaintiff notes he was "ambushed" at the meeting with supervisory personnel by not being told they had menus from the restaurants where he had eaten. Defendant's witnesses testified that the same procedure was followed with plaintiff as with any other employee committing a comparable offense. Chapdelaine testified he would not have shown the menus to anyone else. He did not want to help plaintiff "build what the truth is" by showing him the menus, but rather wanted plaintiff's honest answer. Supp. Vol. V at 358.
 
 
 14
 Plaintiff points out that Chapdelaine prepared a response to plaintiff's request for an affirmative action investigation, but "forged" another employee's signature. Chapdelaine was instructed by his superior to prepare the report. It was prepared after plaintiff had been terminated and his arbitration conducted. There is no evidence the report played any role in plaintiff's termination.
 
 
 15
 Plaintiff also notes that defendant could not find expense statements submitted by five white employees who went on the San Francisco trip. He offered nothing other than speculation that any of these employees inflated their expenses.
 
 
 16
 Plaintiff also claims defendant's practice was to allow employees who inflated their expense statements simply to withdraw their statements. Defendant's witnesses testified they would return an expense statement if an employee claimed an unauthorized expense or committed a mathematical error, but denied such a practice existed when fraud is involved. Further, plaintiff's argument that he was not given a fair opportunity to explain or withdraw the excess expenses, as were other employees, is contradicted by undisputed evidence that he was asked several times if he was certain his expenses were correct, and he insisted they were.[3]
 
 
 17
 Plaintiff claims two white employees, Monasco and Kopanke, lied on their expense statements but were not terminated. The evidence established that Monasco was either terminated or held out of service, and when he voluntarily came forward and admitted he had "forced the numbers" on his expense statement, he was reinstated. He lost approximately forty-three days of pay.
 
 
 18
 The union representative testified that he discussed with defendant the possibility of settling the case by having plaintiff forego back pay and sign a letter with some sort of admission of guilt. Plaintiff agreed to return the expense money but refused to forego back pay or sign any documents admitting wrongdoing.
 
 
 19
 Kopanke refused to admit his expenses were inaccurate, was terminated, but was ordered reinstated by an arbitrator. In contrast, plaintiff's termination was upheld by the arbitrator. The evidence amply demonstrates that any different treatment plaintiff received was based on reasons other than race or national origin. We conclude the district court's findings are not clearly erroneous.
 
 
 20
 Plaintiff's claim that the district judge was biased, apparently because the judge ruled against him, is utterly meritless. See United States v. Carroll, 567 F.2d 955, 958 (10th Cir.1977)(holding adverse rulings of judge do not establish judicial bias or prejudice). We find no basis for overturning the judgment.
 
 
 21
 The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.
 
 
 22
 The mandate shall issue forthwith.
 
 
 
 **
 Honorable John W. Lungstrum, District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Plaintiff also brought claims under 42 U.S.C.1981 and 1983 and the Fourteenth Amendment which the district court dismissed for failure to state a claim; that ruling is not challenged
 
 
 [3]
 He maintained throughout the trial that the expenses were correct