**Allen HAMPEL, Plaintiff,**

v.

**The CITY AND COUNTY OF DENVER, a Municipal corporation; Gilbert M. Gonzales, individually and as the Administrative Manager of the Auditor's Office of the City and County of Denver; Robert L. Crider, individually and as Auditor for the City and County of Denver; Byron J. Haze, individually and as Investigator of the Department of Public Works; Ed Sullivan, individually and as special assistant to the Auditor, Defendants.**

**Civ. A. No. 92–K–746.**

United States District Court, D. Colorado.

Sept. 26, 1994.

Paul A. Baca, Denver, CO, for plaintiff.

Daniel E. Muse, City Atty., J. Wallace Wortham, Jr., Asst. City Atty., Denver, CO, for defendants.

**MEMORANDUM OPINION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR ENTRY OF JUDGMENT**

KANE, Senior District Judge.

This case is before me on Plaintiff Allen Hampel's claims that he was terminated from his employment on the basis of ethnicity, namely being Jewish, and because of the exercise of his right to free speech under the First Amendment to the United States Constitution in violation of 42 U.S.C. §§ 1981 and

1983 and 2000e–17. The court has jurisdiction over the parties and the subject matter. All prerequisites to the filing of this action have been satisfied.

## I. *Findings of Fact.*

From the testimony of the witnesses at trial, the exhibits admitted into evidence, the stipulations of the parties and the admissions contained in the pleadings, I find the following facts to be established:

Allen Hampel is a Jewish male and former employee of the City and County of Denver Auditor's office. He was employed there for approximately seven years until discharged on August 13, 1991. At that time he was an investigator for the Prevailing Wage Unit ("PWU"), charged with enforcing the city's prevailing wage law. In January 1988 the city hired Defendant Gilbert Gonzales as supervisor of the PWU.

During the period in which he was supervised by Gonzales, Hampel received evaluations varying from "strong" to "effective." In late 1990, Hampel complained to Gonzales about the discriminatory atmosphere in the PWU office and particularly about derogatory comments made to him concerning his Jewish heritage. Gonzales failed to take any remedial measures.

Under Gonzales' supervision, Hampel oversaw the activities of a number of city contractors, including Lee Maintenance and Raymond's Painting. In early 1991 Hampel learned that Raymond's Painting had given Gonzales paint gratis. Hampel advised a co-worker, John Noffsinger.

Noffsinger and Hampel, concerned about a potential conflict of interest, discussed the matter with an official of the city's Career Service Authority who suggested bringing the matter to the attention of the newly elected auditor, Defendant Robert Crider. Noffsinger and Hampel met with Crider and advised him of Gonzales' receipt of paint and other improprieties of Gonzales in allowing the use of city word processing facilities for preparation of resumes and homework assignments. Crider promised to investigate the allegations and to keep Noffsinger's and Hampel's identities secret. Shortly thereafter, Crider advised Gonzales that Noffsinger and Hampel had made the aforesaid allegations against him.

The city had a maintenance contract relating to McNichols Sports Arena which was held by Lee Maintenance. Gonzales and Hampel were responsible for the monitoring of the contract. In June, 1991, Midwest Services, Inc., a competitor of Lee Maintenance, requested a review of the payroll records of Lee Maintenance. Gonzales assisted Midwest Services, Inc. in the review and pointed out several alleged violations of the prevailing wage laws. Gonzales brought the matter to the attention of Crider who requested an audit of the Lee Maintenance Contract for the period January 1990 to June 30, 1991. The audit revealed that Lee Maintenance was not operating within the ambit of the prevailing wage ordinance nor submitting required documentation to the City Auditor's Office.

After Crider requested the audit, Gonzales approached Hampel and said "I'm going to get you, Jew boy." Gonzales denied making this threat and I find his testimony is not credible. Hampel filed a grievance with the Career Service offices. Hampel complained to Crider about discriminatory remarks in the PWU and about Gonzales' threat. Crider did not take any remedial measures.

In July 1991 Crider learned of an investigation being conducted by Defendant Byron Haze, an investigator for the city's Public Works department, into allegations of improper conduct by a city employee in the PWU. Crider authorized Haze to continue the investigation of the allegations against Gonzales. During his investigation Haze learned from Bob Wykert, manager of Lee Maintenance, that Hampel and Noffsinger had discussions with him concerning the difficulties Wykert was having with Gonzales and provided him with a list of contractors having similar difficulties. Haze was told by Wykert and Jin Lee of Lee Maintenance that Hampel had informed them that Crider and Gonzales intended to take the contract away from Lee Maintenance and that Crider could not be trusted. Haze reported to Crider that Hampel and Noffsinger were conspiring to cause the removal of Gonzales and told him

of Hampel's aforesaid conversations with Wykert and Lee.

On August 9, 1991, Crider and Sullivan, Special Assistant to the Auditor, conducted a pre-disciplinary meeting with Hampel to see if he had any explanations of the allegations of neglect of duty concerning the Lee Maintenance contract and of attempts to cause the removal of Gonzales. Crider and Sullivan did not provide Hampel with any documentation reflecting any alleged errors in the Lee Maintenance contract which could be attributed to him or give him a meaningful opportunity to respond to the allegations.

Sullivan recommended that Crider place Hampel and Noffsinger on investigatory leave and later recommended that Hampel be terminated and Noffsinger be suspended for thirty days. On August 13, 1991, Crider terminated the employment of Hampel on the grounds of his unsatisfactory job performance in the monitoring of the Lee Maintenance contract, his efforts to have Gonzales removed and an attempt to denigrate the public trust of the auditor's office for his own advantage. The audit of the Lee Maintenance Contract was not completed until September 7, 1991. Crider placed Noffsinger on a thirty-day leave.

Hampel was initially replaced by Sharon Frank, a woman of Jewish ethnicity, who was on contract status with the City Auditor's office. Ultimately, a non-Jewish person was appointed to Hampel's formerly held position of career service status.

## II. *Conclusions of Law.*

### A. *Title VII Claim.*

■ In analyzing Hampel's Title VII claim, I adopt the burden shifting format set out in *McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (quoting *McDonnell,* 411 U.S. at 802–4, 93 S.Ct. at 1824–25).

Hampel alleges that the city wrongfully terminated him because of his Jewish ethnicity. To prove a prima facie case of discriminatory termination, Hampel must show that: (1) he belongs to a class protected by Title VII, (2) he was terminated for violating a work rule and (3) similarly situated non-Jewish employees were treated differently. *See EEOC v. Flasher Co., Inc.,* 986 F.2d 1312, 1316 (10th Cir.1992).

Hampel has shown that, being Jewish, he is a member of a protected class, he was terminated for violating the city's work rules and Noffsinger, a similarly situated non-Jew, was treated differently. Since Hampel has established a prima facie case, the burden of production shifts to Defendants to articulate a legitimate non-discriminatory reason for termination of Hampel's employment.

Defendants have set forth a facially non-discriminatory reason for Hampel's termination, namely, that Hampel's conduct was more serious than Noffsinger's in that Hampel alone violated the public trust in the Auditor's office by misrepresenting, for his own advantage, that the City Auditor was out to take a private contract away and that the auditor could not be trusted. At this point, the burden shifts back to Hampel to show the legitimate reason was not the true reason but a pretext for discrimination. *See Id.*

Hampel has discharged this burden by showing that Gonzales had made the remark "I'll get you, Jew boy," that Hampel lodged a grievance and complained to Crider in this regard and no remedial action was taken. Hampel has shown further that Gonzales, as his supervisor, and Crider as Auditor, participated in the decision-making process concerning his termination. Gonzales' ethnically based threat and Crider's failure to take remedial action are sufficient to show "dis-

criminatory animus" in the terminating decision. *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir.1994). Gonzales' threat was more than a "stray remark" and was sufficient in its directness to establish a nexus with the decision to terminate. *Id.*

I conclude the measures taken against Hampel were discriminatory, the legitimate reasons offered by the Defendant were pretextual and Hampel's termination would not have occurred in the absence of Gonzales' ethnically based discriminatory insult and Crider's tacit condonation as manifested by his failure to take remedial action.

### B. *First Amendment Claim.*

 Hampel also claims Defendants discharged him based on the exercise of his First Amendment rights in reporting Gonzales for a conflict of interest in accepting paint from a contractor. Section 1983 prohibits state actors from depriving any person "of rights, privileges and immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

To succeed in his First Amendment claim, Hampel must show that his statement concerning Gonzales "'touches upon a matter of public concern.'" *Workman v. Jordan*, 32 F.3d 475, 482 (10th Cir.1994) (citing *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983)). In determining if Hampel's speech related only to internal personal matters rather than the discharge of governmental responsibilities, I consider its "content, form and context ... as revealed by the whole record." *Connick*, 461 U.S. at 147–48, 103 S.Ct. at 1690. *See Koch v. City of Hutchinson*, 847 F.2d 1436, 1443–49 (10th Cir.), *cert. denied*, 488 U.S. 909, 109 S.Ct. 262, 102 L.Ed.2d 250 (1988). I also consider Hampel's motive to determine if his report concerning Gonzales was calculated to redress a personal grievance rather than a broader public purpose. *See Patrick v. Miller*, 953 F.2d 1240, 1248 (10th Cir.1992). "In drawing the thin line between a public employee's speech which touches on matters of public concern, and speech from the same employee which only deals with personal employment matters, we have looked to the subjective intent of the speaker." *Schalk v. Gallemore*, 906 F.2d 491, 495 (10th Cir.1990).

Considering the content and context of Hampel's report concerning Gonzales, I conclude Hampel's subjective intent was not primarily to speak out on a matter of public concern but rather to address a grievance of a personal nature. Accordingly his report concerning Gonzales was not protected and Defendants did not violate Hampel's First Amendment rights.

### III. *Conclusion.*

I find Hampel has proved his Title VII claim against The City and County of Denver, Robert Crider and Gilbert Gonzales, but has not proved this claim against Haze and Sullivan. I order that Hampel receive backpay, including incremental increases, and reinstatement to the position from which he was terminated or a comparable position. He is also entitled to full seniority rights and career service step increases plus such other items of damage provided by law.

I award punitive damages against Defendant Gonzales, only, in the amount of $1000.00. I do not find any other Defendant's conduct reached the level of willful and wanton disregard for Hampel's rights.

I find for Defendants on the § 1983 claim based on the alleged violation of Hampel's First Amendment Rights. I do not make an award of attorney fees against any party on the § 1983 claim. On the Title VII claim, however, Hampel is entitled to attorney fees and costs.

I order Hampel to prepare a final judgment for my signature, including the amount of damages, attorney fees and costs to be paid by Defendants, The City and County of Denver, Robert Crider and Gilbert Gonzales. This judgment, approved by Defendants' counsel as to form, shall be submitted on or before October 20, 1994. In the absence of such prepared judgment, counsel for Hampel shall notify me in writing on or before October 21, 1994 that agreement cannot be reached and the issues will be set for hearing.