**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 4 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

GREGORY S. GOODWIN,

      Plaintiff-Appellee,

v.

M.C.I. COMMUNICATIONS
CORPORATION,

      Defendant-Appellant.

No. 96-1096
(District of Colorado)
(D.C. No. 94-D-1869)

**ORDER AND JUDGMENT**[*]

Before **MURPHY** and **LOGAN,** Circuit Judges, and **MILES-LaGRANGE,** District Judge.[**]

      Defendant MCI Telecommunications Corp. (MCI) appeals the trial court's

ruling in favor of plaintiff Gregory S. Goodwin on his employment discrimination

---

      [*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

      [**]Honorable Vicki Miles-LaGrange, District Judge for the Western District of Oklahoma, sitting by designation.

claim, brought pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court affirms.

**FACTS**

Goodwin, an African-American, was employed by MCI from 1990 to 1994.

Goodwin began working for MCI in Pentagon City, Virginia, as a temporary

employee in the position of call analyst. In 1992, Goodwin became permanently

employed by MCI as a staff administrator in MCI's Client Services Group, and in

1993, Goodwin was promoted to the position of supervisor. During 1993, MCI

was transferring its Client Services Group operation to Colorado Springs,

Colorado, from Pentagon City. Goodwin was offered a transfer to Colorado

Springs, which he accepted.

Goodwin permanently relocated to Colorado Springs in late 1993. As a

supervisor in Colorado Springs, Goodwin's duties including supervising call

analysts and interviewing, hiring, and training temporary employees for the

position of call analyst. In early 1994, Goodwin was terminated. MCI's records

indicate that at the time of his termination, Goodwin was informed he was being

discharged because he had engaged in conduct that was unethical and

nonconducive to the work environment by dating a temporary employee, seeking

to date another temporary employee, and falsifying a time card for one of these

employees.

Goodwin brought this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, alleging that MCI's termination of his employment was racially motivated. MCI responded that Goodwin was terminated for legitimate, nondiscriminatory reasons. MCI asserted it had reasonable grounds to believe that Goodwin had sexually harassed female employees and had authorized the signing of a falsified time card. At the bench trial, MCI introduced evidence that Goodwin dated one temporary employee, Lori Briggs, and that this relationship created disruption in the workplace. MCI also introduced evidence that Goodwin sexually harassed a second temporary employee, Jeannie Segui, by repeatedly asking her out on what she perceived to be dates and by making other improper comments.

The trial court found that Goodwin's relationship with Ms. Briggs had caused disruption in the workplace, and that Goodwin had sexually harassed Ms. Segui by making unwanted overtures over a period of months, creating a hostile working environment. The trial court further found, however, that under MCI's employment policies and procedures, Goodwin's conduct did not warrant automatic termination but only progressive discipline, as was employed by MCI with respect to nonminority employees who committed similar infractions. The trial court also found that Bill Weiland, a director at MCI during the relevant period, was the primary decision maker in the decision to terminate Goodwin and

that Weiland bore racial animus toward African-Americans. The trial court found that this racial animus was "a factor in [Weiland's] decision to terminate Mr. Goodwin." Based on these findings, the trial court determined that MCI had terminated Goodwin on the basis of race in violation of Title VII and that the nondiscriminatory "reasons asserted by MCI are merely pretextual to cover up the racial animus that Mr. W[ei]land directed towards Mr. Goodwin." The trial court awarded Goodwin back pay, emotional distress damages, and attorney fees, and ordered Goodwin's reinstatement to the position of call analyst or some other equivalent position. MCI appeals.

## ANALYSIS

Title VII makes it an unlawful employment practice for an employer to "discharge any individual . . . because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). In race discrimination cases, this circuit follows the burden-shifting format set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Elmore v. Capstan, Inc.*, 58 F.3d 525, 529 (10th Cir. 1995). Under *McDonnell Douglas*, the plaintiff must first establish a prima facie case of discrimination. *See* 411 U.S. at 802. To establish a prima face case of discriminatory discharge, the plaintiff must show that he is a member of a protected class, that he was discharged for violating a work rule, and that

-4-

similarly situated nonminority employees were treated differently. *See EEOC v. Flasher Co.*, 986 F.2d 1312, 1316 (10th Cir. 1992).

If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the employee's termination. *McDonnell*, 411 U.S. at 802. Upon such a showing, the presumption of discrimination established by the prima facie case "simply drops out of the picture," *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993), and the plaintiff "assumes the normal burden of any plaintiff to prove his or her case at trial," *Flasher*, 986 F.2d at 1316. The plaintiff can carry the burden of showing the defendant discriminated on the basis of race "'either directly by proving the employer acted with a discriminatory motive'" or indirectly by showing that the employer's proffered reasons are pretextual. *Elmore*, 58 F.3d at 530 (quoting *Flasher*, 986 F.2d at 1316). "In the final analysis, the court is required to weigh all the evidence and to assess the credibility of witnesses in order to determine whether the plaintiff was the victim of intentional discrimination based upon protected class characteristics." *Flasher*, 986 F.2d at 1317.

In this case, because there was a full trial on the merits, the burden-shifting *McDonnell Douglas* analysis has dropped out of consideration and "we are left with the single overarching issue whether plaintiff adduced sufficient evidence to

warrant [the court's] determination that adverse employment action was taken against him on the basis of [race]." *Fallis v. Kerr-McGee Corp.*, 944 F.2d 743, 744 (10th Cir. 1991). The ultimate determination of "whether there was intentional discrimination against a protected class is considered a question of fact for the district court to decide." *Flasher*, 986 F.2d at 1317.

We review the trial court's factual findings under the clearly erroneous standard. *See id.* "Under this standard, we may uphold any determination falling within a broad range of permissible conclusions. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all the evidence, [this court] is left with the definite and firm conviction that a mistake has been made." *Elmore*, 58 F.3d at 530-31 (citations and internal quotations omitted).

On appeal, MCI argues the trial court's ultimate determination that Goodwin's discharge was racially motivated is clearly erroneous because the trial court's underlying findings are unsupported by the record. MCI specifically challenges two of the trial court's factual findings. First, MCI challenges the trial court's finding that the customary practice at MCI was to employ progressive discipline except in extreme cases of improper conduct, such as in situations of "fraud, theft, [or] use of weapons."

Our review of the record shows there is support for the trial court's progressive discipline finding. Several witnesses testified that although MCI's handbook stated that there was no such policy, there was in fact a mandatory progressive discipline policy at MCI, which was followed except in cases of fraud and theft. Witnesses further testified that Goodwin's termination was inconsistent with MCI's progressive discipline policies and procedures.

MCI asserts, however, that this testimony was insufficient to support the trial court's progressive discipline finding because those witnesses testifying about such a policy worked in the Virginia office and so could not testify about the discipline policy at the Colorado Springs office where Goodwin was employed at the time of his discharge. MCI further points to the testimony of several witnesses who disputed that there was a mandatory discipline policy at MCI. In addition, MCI notes there was testimony that, even if a progressive discipline policy was employed in Virginia, things were different in Colorado Springs.

The trial court recognized the testimony concerning the issue of progressive discipline was conflicting. Based, however, on the testimony of the witnesses who described a progressive discipline policy employed at MCI in Virginia and who claimed this policy was mandatory at MCI, the trial court was permitted to infer that MCI had a company-wide policy of employing progressive discipline. In fact, in its closing argument, MCI's attorney recognized this was one possible

inference of the testimony presented, although the attorney argued the trial court should not accept this inference. The trial court's finding was therefore not clearly erroneous, and the trial court was permitted to rely on this finding in making its ultimate determination of intentional discrimination. *See Elmore*, 58 F.3d at 531 (stating where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous); *see also Flasher*, 986 F.2d at 1320 ("[A] fact finder may, upon an appropriate record, infer that an illegal discriminatory motive lies behind otherwise irrational business conduct [i.e., conduct that cannot be explained on the basis of company policies] that disadvantages a protected status employee.").

MCI next challenges the trial court's finding that progressive discipline had been employed with respect to similarly situated nonminority employees who were accused of, or commonly known to have engaged in, sexual harassment. MCI argues there is "no evidence in the record from which any reasonable fact finder could have concluded that the allegedly comparable employees cited by Goodwin were in fact similarly situated." We need not, however, decide whether the trial evidence was sufficient to support the trial court's finding concerning similarly situated employees because we conclude that, based on the trial court's remaining findings, there was sufficient evidence in the record to support the court's ultimate determination that Goodwin's discharge was racially motivated.

MCI has not challenged the remaining findings underlying the trial court's ultimate determination of racial discrimination. Primary among these findings are those concerning Mr. Weiland, including that Weiland was the primary decision maker in the termination decision, that he bore racial animus toward African-Americans, and that he exhibited such racial animus in Goodwin's termination.

Mr. Weiland testified that he was not the sole decision maker, but that Gordon Gray, a vice president at MCI, and Susan Geller, the senior manager over Goodwin, also participated in the decision. Weiland further testified that in making the decision, they relied on reports and recommendations from MCI's Human Resources department and from Nancy Casados, a Human Resources representative. Weiland also testified that the decision to terminate Goodwin was not racially motivated but was based on Goodwin's alleged sexual harassment of a subordinate and other disruptive conduct in the workplace.

The testimony of other witnesses, however, conflicted with Weiland's testimony. The trial court's findings concerning Weiland, as well as the court's ultimate determination that "the reasons asserted by MCI [for Goodwin's discharge] are merely pretextual to cover up the racial animus that Mr. W[ei]land directed towards Mr. Goodwin," indicate that the court found Weiland's testimony not to be credible and chose instead to credit the testimony of other witnesses. In reviewing the trial court's findings, as well as its ultimate

determination of discrimination, we give deference to the trial court's credibility determinations. *See* Fed. R. Civ. P. 52(a); *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574-75 (1985). The trial court's apparent disbelief of Weiland's account of Goodwin's discharge is significant. As the Supreme Court has stated, "The fact finder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." *Hicks*, 509 U.S. at 511; *see also Randle v. City of Aurora*, 69 F.3d 441, 451-52 (10th Cir. 1995) (stating plaintiff may satisfy burden of persuading the court he was the victim of intentional discrimination by showing employer's proffered explanation is unworthy of credence).

The trial court's findings concerning Weiland are supported by the record. The trial court could infer from evidence presented at trial that Weiland was the primary decision maker, and that in making the decision to discharge Goodwin, Weiland had followed a decision process contrary to usual practice. Gordon Gray testified the decision to terminate Goodwin was a "joint decision" made by Weiland and himself, but he also testified that he relied on Weiland and on Casados' report to provide him with the facts of Goodwin's situation. Gray also testified, however, that he did not participate in, or supervise, the investigation

made by Nancy Casados, and that neither the Human Resources department nor Casados made any recommendations of the appropriate disciplinary action to take.

There was also testimony that Ken Lincoln and Susan Geller, the manager and senior manager directly over Goodwin, would normally have been included in the decision-making process, but that contrary to this usual practice they were largely excluded by Weiland from participating in the decision. In addition, witnesses testified that both Geller and Lincoln had stated they believed Goodwin should not have been fired, and that Geller had indicated that "once it went to Bill [Weiland], . . . it got out of control."

There was also substantial evidence of Weiland's racial animus toward Goodwin and toward African-Americans in general. A number of witnesses testified Weiland had on several occasions exhibited racial animus toward African-Americans. Several witnesses testified in particular of certain comments made by Weiland during a management meeting held in part to discuss concerns over the terminations of Goodwin and another African-American employee which took place within a short time frame in the Colorado Springs office. These comments included a statement by Weiland that if he were in a room full of black men, he would be "uncomfortable" or "scared," and a comment that he was "disgusted" by Goodwin's relationship with an employee who was white. These statements, made by the primary decision maker and in the context of discussing

Goodwin's termination, support an inference that Weiland was motivated by discriminatory intent in terminating Goodwin. *Cf. Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994) (stating isolated comments, unrelated to the challenged action and made by non-decision makers, are insufficient to show discriminatory animus in termination decisions); *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1457 (10th Cir. 1994) (same).

After reviewing the entire record, we conclude the trial court's ultimate determination that Goodwin's discharge was racially motivated is not clearly erroneous.[1]  Accordingly, the judgment of the district court is **AFFIRMED.**

ENTERED FOR THE COURT:


Michael R. Murphy
Circuit Judge

---

[1]MCI also argues that, given the trial court's finding that Goodwin sexually harassed one employee, the trial court's judgment in Goodwin's favor is contrary to the public policy underlying Title VII's strict prohibition on workplace sexual harassment.  MCI argues this public policy requires that employers be free to discharge, rather than merely discipline, employees who sexually harass.  We do not address this argument, however, as the trial court found that Goodwin was discharged because of racial discrimination, not because of sexual harassment.