**Larry HENDRICKS, Plaintiff,**

v.

**MID-AMERICA PIPELINE COMPANY, Defendant.**

**No. CIV. A. 96–4180–DES.**

United States District Court, D. Kansas.

Nov. 13, 1997.

Kirk W. Lowry, Palmer & Lowry, Topeka, KS, for Plaintiff.

Larry W. Joye, Paul A. Feuerborn, Morrison & Hecker L.L.P., Kansas City, MO, for Defendant.

## MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This age discrimination matter is before the court on defendant's Motion for Summary Judgment (Doc. 28). Plaintiff has filed a memorandum Response in opposition to defendant's motion (Doc. 30). Defendant has filed a Reply (Doc. 31). For the reasons set forth below, defendant's Motion for Summary Judgment is granted.

## I. BACKGROUND

The following facts are uncontroverted or, where controverted, construed in a manner most favorable to the plaintiff as the non-moving party.

Plaintiff, Larry Hendricks, was employed by defendant Mid–America Pipeline Company ("MAPL") from November 1969 to October 24, 1994. Defendant MAPL is a pipeline company that delivers its product through a series of pipelines located throughout the central United States. The product is a combination of highly flammable gasses that is moved through the pipelines by a series of pump stations located at several points along the pipeline.

Mr. Hendricks worked at MAPL's Eskridge, Kansas, pump station from approximately 1974 until his discharge on October 24, 1994. Throughout this period, Mr. Hendricks was employed as a field technician at various levels. Field technicians are directly supervised by a maintenance supervisor. Tim Berry was the maintenance supervisor from March 1994 through the date of plaintiff's discharge. The maintenance supervisor reports to the area manager. William E. Welch was the area manager for the Kearney region, which includes the Eskridge station, from August 1993 through the date of plaintiff's discharge.

On or about April 13, 1994, Mr. Berry performed a physical inspection of the Eskridge Station. This was his first visit to the station and his first personal contact with plaintiff. During this inspection, Mr. Berry discovered that several seal fail probes on the pipeline units were pulled back from their original position. The seal fail probes are one of the safety device on the pump unit which are designed to indicate when pipeline gas is leaking. Pulling back the seal fail probes partially disables the safety function of the device because it allows a larger quantity of gas to be released before it is detected and increases the possibility of an undetected gas leak.

Before leaving the station, Mr. Berry told Mr. Hendricks to put the probes back in their original position. Mr. Hendricks adjusted the probes after Mr. Berry left the station. On April 15, 1994, Mr. Berry returned to the Eskridge Station after Mr. Hendricks had finished his shift and gone home. Mr. Berry states that he discovered that the probes on one of the pump units were still pulled back more than six inches from their original position. He also states that he put the probes back in their proper position and went home.

As a result of the seal fail probe incident, Mr. Berry and Mr. Welch demoted Mr. Hendricks and put him on a six-month probation. Mr. Berry explained to Mr. Hendricks the disciplinary action that he would receive on or about April 18, 1994. Mr. Hendricks was demoted and placed on a six-month probation beginning on May 1, 1994. The evidence shows that Mr. Hendricks understood that during that probationary period he would be terminated without exception if he failed to meet his supervisor's expectations and that

the primary reason for this discipline was that he had failed to follow Mr. Berry's instructions.

On or about April 28, 1994, Mr. Hendricks received and signed his annual performance evaluation which was prepared by Mr. Welch. Mr. Hendricks received a "deficient" rating in the safety category, with the warning that "employee performance is clearly deficient, without improvement, replacement action is probable." Mr. Hendricks overall performance rating was "requires improvement," with the comment "needs to become more efficient in knowledge of electrical and electronics. Needs to adhere to all safety practices and devices ."

On or about September 21, 1994, Mr. Hendricks and a coworker, Larry Baker, were installing an accessory gearbox on the pumps at the Eskridge Station when they discovered that two of the four bolts needed to install the gearbox were defective. Mr. Hendricks and Mr. Baker installed the gearbox with the two defective bolts, but left the pump unit out of service.

Mr. Hendricks called Mr. Berry to inform him about the defective bolts and Mr. Berry instructed plaintiff to leave the unit locked out. Mr. Berry immediately ordered new bolts for the unit and ordered plaintiff to keep the unit out of service until the bolts arrived. On September 23, 1994, at approximately 3:40 a.m., Roger Collins, a dispatcher at MAPL's main office in Tulsa, Oklahoma, called Mr. Hendricks at home to inquire as to why the red unit at the Eskridge Station was not running. Mr. Hendricks advised Mr. Collins of the problem with the defective bolts on the accessory gearbox. Soon after that, John Kees, a planner at MAPL's Tulsa office, called plaintiff to inquire about the unit being out of service. The nature of these "inquiries" appear to have been more in the nature of entreaties. Shortly after speaking with Mr. Kees, Mr. Hendricks put the unit back into service. He did not attempt to contact Mr. Berry or Mr. Welch prior to putting the unit back into service, even though he generally had access to each of them by either telephone or pager.

After the gearbox incident, Mr. Hendricks took two weeks of vacation, during which time Mr. Berry and Mr. Welch deliberated as to the appropriate disciplinary action for Mr. Hendricks' conduct with respect to the gearbox incident. Mr. Berry and Mr. Welch decided to terminate Mr. Hendricks. On October 24, 1994, Mr. Berry and Mr. Welch met with Mr. Hendricks and offered him the option to resign or be discharged. When Mr. Hendricks refused to resign, he was discharged.

## II. SUMMARY JUDGMENT STANDARD

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. at 2509. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might properly affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir.1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. at 2552.

Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S.

574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (interpreting Fed. R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. at 2551. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. at 2552.

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues"). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. at 2510.

### III. DISCUSSION

Defendant seeks summary judgment on plaintiff's claims that defendant violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.,* by discharging him on the basis of his age. The ADEA makes it unlawful for an employer to discharge an individual because of such individual's age. 29 U.S.C. § 623.

The Tenth Circuit has adopted the burden-shifting format set out in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as a framework for analyzing civil rights claims when no direct evidence of discrimination exists. *E.E.O.C. v. Flasher Co., Inc.,* 986 F.2d 1312, 1316 (10th Cir.1992). The Tenth Circuit has applied this framework to claims brought under the ADEA. *See Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526 (10th Cir.1994) (applying the *McDonnell Douglas* framework to ADEA claim).

■ To survive summary judgment, the plaintiff must first establish a prima facie case of discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. Once the plaintiff has established a prima facie case, a rebuttable presumption of discriminatory intent arises and the burden of production shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* "[T]he defendant does not at this stage of the proceedings need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion." *E.E.O.C. v. Flasher,* 986 F.2d 1312, 1316 (10th Cir.1992) (citations omitted). However, the employer's reason for the adverse action "must be reasonably specific and clear." *Id.*

■ If the defendant employer meets this burden, the presumption of discrimination arising from the prima facie case "simply drops out of the picture." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 2748, 125 L.Ed.2d 407 (1993). " 'At the summary judgment stage, it then becomes the plaintiff's burden to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e. unworthy of belief.' " *Marx v. Schnuck Markets, Inc.,* 76 F.3d 324, 327 (10th Cir.1996) (quoting *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 2552, 135 L.Ed.2d 1071 (1996)). The plaintiff may establish pretext by showing " 'that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence.' " *Rea v. Martin Marietta Corp.,* 29 F.3d 1450, 1455 (10th Cir.1994) (quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981)). *See Randle,* 69 F.3d at 451. The court must

determine whether the evidence, interpreted in the light most favorable to the plaintiff, "could persuade a reasonable jury that the employer had discriminated against the plaintiff." *Jones v. Unisys Corp.*, 54 F.3d 624, 632 (10th Cir.1995) (quoting *Hooks v. Diamond Crystal Specialty Foods, Inc.*, 997 F.2d 793, 798 (10th Cir.1993).) "If no facts relating to the pretextuality of the defendant's action remain in dispute, summary judgment is appropriate." *Id.* The plaintiff at all times bears the "ultimate burden of persuasion." *See St. Mary's Honor Center*, 509 U.S. at 511, 113 S.Ct. at 2748 (citations omitted).

■ To establish a prima facie case of age discrimination pursuant to the ADEA, plaintiff must show that (1) he is "within the protected age group"; (2) he "was doing satisfactory work"; (3) he "was discharged"; and (4) his position was filled by a younger person. *Cone*, 14 F.3d at 529 (citing *Denison v. Swaco Geolograph Co.*, 941 F.2d 1416, 1420 (10th Cir.1991).) Plaintiff's burden in establishing his *prima facie* case is relatively light. *St. Mary's Honor Center*, 509 U.S. at 515, 113 S.Ct. at 2751 ("what is required to establish the *McDonnell Douglas prima facie* case is infinitely less than what a directed verdict demands.").

■ Defendant concedes that plaintiff was a member of the protected age group, that he was discharged, and that he was replaced by a younger employee. Nevertheless, defendant contends, plaintiff cannot establish a prima facie case against because he was not doing satisfactory work at the time of his termination. In support of its argument, defendant asserts that plaintiff "committed two acts of insubordination within a short period of time prior to his termination." The court rejects defendant's attempt to defeat plaintiff's prima facie case by articulating its reasons for the discharge. Plaintiff has presented evidence sufficient to demonstrate that his work was satisfactory. Accordingly, the court finds that plaintiff has made a prima facie showing of age discrimination under *McDonnell Douglas.*

■ At this point, defendant must provide evidence of a "legitimate, nondiscriminatory reason" for its conduct. In other words, defendant's burden is to establish facts from which the court may infer a proper reason behind defendant's decision to discharge plaintiff. Defendant contends that its explanation for discharging plaintiff constitutes a legitimate, nondiscriminatory reason for its actions. The primary reason advanced by defendant for discharging plaintiff is that plaintiff committed two acts of insubordination within a six month period prior to his termination, with the second incident occurring while he was still on probation for the first.

The court finds that the explanation advanced by defendant for discharging plaintiff constitutes a legitimate, nondiscriminatory reason for its actions. *See Ray v. Safeway Stores, Inc.*, 614 F.2d 729, 730–31 (10th Cir. 1980) (holding that insubordination of employee was legitimate, nondiscriminatory rationale for termination). Accordingly, to survive summary judgment at this point, plaintiff must show there is a genuine dispute of material fact as to whether defendant's proffered reason for the challenged action is pretextual—i.e. unworthy of belief. *See Reynolds v. School District No. 1*, 69 F.3d 1523 (10th Cir.1995).

■ Plaintiff argues that defendant's proffered reason for the challenged action is pretextual for several reasons. Plaintiff first argues, based on his deposition testimony, that the gearbox incident occurred thirty days before his termination and that he had not "heard any word or problem" about the incident until this litigation. Likewise, plaintiff offers his testimony to show that defendant's other proffered reason for discharge, the seal probe incident, was not mentioned at the time of his discharge nor at any other time until litigation commenced.

■ The court agrees that reasons advanced by a defendant to explain its conduct, which are first advanced after a considerable delay, suggest that the reason was a pretextual afterthought to avoid the consequences of improper motive. Such delay is especially significant when the explanation is articulated for the first time in response to the plaintiff's charges of discrimination. This does not appear to be the case here, however. As

defendant points out, plaintiff admitted during his deposition that he was informed, at the time of his discharge, that he was being terminated for the gear box incident. The fact that the seal probe incident may not have been mentioned is irrelevant considering that defendant advanced a legitimate and nondiscriminatory reason for its challenged conduct at the time of that conduct.

Plaintiff also attempts to raise a potential credibility issue regarding the seal probe incident. Defendant contends that plaintiff left a seal probe in the wrong position. For evidence of this alleged error, defendant relies on Mr. Berry's statement that he found all but one probe out of place during his April 17, 1994 inspection. Mr. Hendricks presents his own testimony as evidence to the contrary. His position is unavailing, however, in light of his own admission that he failed to follow Mr. Berry's instruction to move the seal probes back to their original position. That Mr. Hendricks had pulled the probes back numerous other times throughout his twenty-five year employment without being disciplined does not lessen the effect of this admission. Nor does his personal belief, whether founded or not, that pulling the probes back did not create a potential hazard. Moreover, even if Mr. Hendricks in fact believed he had followed Mr. Berry's instructions, this does not establish that defendant's reliance on the incident as part of the reason for plaintiff's discharge is unworthy of belief.

Mr. Hendricks further argues that his failure to follow Mr. Berry's order not to activate the pumping unit until the gearbox was repaired should be extenuated because he was under pressure from the home office to activate the unit. While this may have been true, it is uncontroverted that plaintiff was under instructions from Mr. Berry not to run the unit. That he did not believe the order was a "direct order" is irrelevant, especially since he was still on probation for not explicitly following Mr. Berry's instructions with regard to the seal probes. Furthermore, even if this argument might explain the reasons for plaintiff's actions, it does not establish that defendant's reliance on the in-

cident as part of the reason for plaintiff's discharge is unworthy of belief.

Finally, the case law cited in support of plaintiff's arguments is readily distinguished from the present case. In *Corneveaux v. Cuna Mt. Ins. Group*, 76 F.3d 1498 (10th Cir.1996), the plaintiff introduced substantial, credible evidence that clearly contradicted each of the reasons offered by the defendant for its challenged conduct, including testimony of other employees and examples disparate conduct. *Id.* at 1503–04. In contrast, the only evidence advanced in this case has been plaintiff's own, somewhat contradictory, testimony. Likewise, in *Spulak v. K Mart Corp.*, 894 F.2d 1150 (10th Cir.1990), the plaintiff advanced substantial evidence that the defendant employer did not uniformly enforce its rules and that the plaintiff's former manager made several age-discriminatory remarks. *Id.* at 1155. Plaintiff has presented no similar evidence in this case.

Viewing the facts in the light most favorable to plaintiff and allowing plaintiff the benefit of all reasonable inferences to be drawn from the evidence, the court finds no genuine issue of material fact remains. The court also finds that the evidence, interpreted in the light most favorable to the plaintiff, could not persuade a reasonable jury that defendant discriminated against plaintiff. Mere conjecture that the employer's explanation is a pretext for intentional discrimination is not enough to overcome a motion for summary judgment. *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir.1988). Accordingly, defendant is entitled to judgment as a matter of law.

**IT IS THEREFORE BY THE COURT ORDERED** that defendant's Motion for Summary Judgment (Doc. 28) is granted.