**Betty J. BIRCH, Plaintiff,**

v.

**Togo D. WEST, Jr., Secretary of the Army, Defendant.**

**Civ. A. No. 92–K–1608.**

United States District Court, D. Colorado.

Dec. 12, 1994.

**312**

Stephanie H. Yukawa, Colorado Springs, CO, for plaintiff.

George Gill, Asst. U.S. Atty., Denver, CO, for defendant.

## MEMORANDUM OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT

KANE, Senior District Judge.

Defendant Secretary of the Army seeks entry of summary judgment against Plaintiff Betty J. Birch on her claims for unlawful retaliation and age discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA"). Birch claims she was passed over for the position of medical librarian at the Medical Science Library, Evans Army Community Hospital, Fort Carson, Colorado because of her age and in retaliation for her continuing pursuit of sexual harassment and discrimination charges against the Navy arising out of her service and 1976 termination from a similar position at Camp Lejeune, North Carolina.[1] The job was offered to a younger applicant, Kathleen Szabo, whom Birch asserts was less qualified than she.

Defendant denies Birch's nonselection was either age-related or retaliatory, and maintains the selecting officer, Army Capt. Terri Lowther, considered both candidates on the basis of their experience, training, and education only. Defendant admits Birch was qualified for the job, but contends that in Lowther's judgment, Szabo was the better candidate. Defendant also argues Birch's nonselection could not have been retaliatory because Lowther did not know of Birch's discrimination suit against the Navy during the consideration process.

---

[1]. Birch claimed she was fired from her Camp Lejeune library position in retaliation for having filed an EEO discrimination complaint. The ensuing lawsuit, which wended its way through the administrative appeals process and the federal courts for a period of twelve years, was dismissed on statute of limitations grounds and was never heard on its merits. *See Birch v. Lehman*, 677 F.2d 1006 (4th Cir.1982) (finding EEOC notice "clearly notified" Birch administrative action "final" and affirming district court's dismissal of her suit as untimely filed), *cert. denied* 459 U.S. 1103, 103 S.Ct. 725, 74 L.Ed.2d 951 (1983). Birch pursued alternative administrative remedies and in 1987, filed another complaint in federal district court. That complaint was dismissed as barred under the doctrine of *res judicata* and affirmed in an unpublished opinion by the Fourth Circuit Court of Appeals. *See Birch v. Webb*, 878 F.2d 378 (4th Cir.1989) (dismissal on statute of limitations grounds bars later litigation of similar claim between same parties in a second action because earlier statute of limitations ruling constitutes judgment on the merits subject to claim preclusion).

I note the Tenth Circuit has explicitly rejected the statute of limitations analysis and the result in *Birch v. Lehman*, finding that case "significant as evidence of the misleading nature of ... [that type of] EEOC notice." *See Martinez v. Orr*, 738 F.2d 1107, 1112 (10th Cir.1984).

For the reasons set forth below, I find there are genuine issues of material fact precluding summary judgment on either claim, and deny Defendant's motion.

## I. *Summary Judgment Standards.*

■ After a hearing held on August 22, 1991, an Equal Employment Opportunity Commission ("EEOC") administrative judge found Birch had failed to establish a *prima facie* case of retaliation and had failed to rebut the nondiscriminatory reasons offered by Defendant to explain its decision not to hire Birch for the Fort Carson medical librarian position. Def.'s Mem.Supp.Mot. Summ.J. at 4, Tab 4 (EEOC Decision). Having commenced this action in federal court, however, Birch's claims are entitled to *de novo* review. *Chandler v. Roudebush*, 425 U.S. 840, 863, 96 S.Ct. 1949, 1960, 48 L.Ed.2d 416 (1976).

■ Rule 56(c) of the Federal Rules of Civil Procedure permits entry of summary judgment where the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In reviewing the present motion, I must accept as true the evidence presented by Birch as the non-movant and draw all justifiable inferences in her favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate only where the record, taken as a whole, could lead no rational trier of fact to find in Birch's favor and would support judgment in favor of Defendant as a matter of law. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. *Merits*

A. *Analytical Framework Under Title VII and the ADEA*

■ In order to prevail on a claim for employment discrimination generally, plaintiff must prove the adverse employment action of which she complains was motivated by an unlawful or discriminatory factor. This may be done through direct or indirect evidence. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dept. Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Direct evidence includes oral or written statements on the part of a defendant showing a discriminatory motivation for that defendant's actions; indirect or circumstantial evidence includes proof of a set of circumstances allowing a reasonable trier of fact to believe sex was a motivating factor in the defendant's actions.

■ Where there is inadequate direct evidence of discrimination, the United States Supreme Court has established a three-step burden-shifting format whereby a plaintiff may prove it indirectly. *McDonnell Douglas*, 411 U.S. at 801–04, 93 S.Ct. at 1823–25; *Burdine*, 450 U.S. at 252–56, 101 S.Ct. at 1093–95. This format has been adopted by the Tenth Circuit. *See Cone v. Longmont Hosp.*, 14 F.3d 526 (10th Cir.1994); *EEOC v. Flasher*, 986 F.2d 1312, 1316 (10th Cir.1992).

■ The first step of the *McDonnell Douglas* framework requires the plaintiff to prove a *prima facie* case of discrimination. The *prima facie* case is not intended to be "rigid, mechanized, or ritualistic." *MacDonald v. Eastern Wyo. Mental Health Ctr.*, 941 F.2d 1115, 1121 (10th Cir.1991) (internal quotes and citations omitted). The central inquiry in evaluating whether plaintiff has met this initial burden is whether the circumstantial evidence is sufficient to create an inference that the basis for the challenged employment decision was an illegal criterion. *Halsell v. Kimberly–Clark Corp.*, 683 F.2d 285 (8th Cir.1982), *cert. denied* 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983).

■ Once plaintiff has established a *prima facie* case, the burden of production shifts to the defendant to articulate a facially nondiscriminatory reason for its employment decision. *Flasher*, 986 F.2d at 1316. Defendant need not litigate the merits of its proffered reason, but must state it specifically and clearly. *Flasher* at 1316. Once defendant sets forth a facially nondiscriminatory reason for its action, plaintiff assumes the normal burden of any plaintiff to prove her case. *Id.*

B. *Birch's Prima Facie Claims for Retaliation and Age Discrimination.*

Defendant concedes Birch has established a *prima facie* case of age discrimination by showing (1) she is within the protected age group; (2) Defendant had a job vacancy for which she applied; (3) Birch was qualified for the position but was not hired; and (4) Defendant hired a younger person instead. *See Branson v. Price River Coal Co.*, 853 F.2d 768, 770 (10th Cir.1988). Defendant contends, however, that Birch cannot state a *prima facie* case of retaliation.

The elements of a *prima facie* case of retaliation are: (1) plaintiff participated in a statutorily protected activity; (2) thereafter[2] she suffered an adverse employment action; and (3) a causal connection between her participation in the protected activity and the adverse action. *Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir.1993). Defendant acknowledges Birch has established the first two elements, but claims it is entitled to summary judgment because Birch has failed to establish a causal connection between her 1976–89 litigation against the Navy and her nonselection for the Fort Carson library position. In support of its assertion, Defendant relies on Capt. Lowther's testimony that she was unaware of Birch's 1976 EEO complaint or the ensuing litigation when she selected Szabo over Birch. Birch concedes she has no direct evidence Capt. Lowther knew of her 1976 EEO Complaint or the ensuing litigation, but offers indirect evidence that Defendant Department of the Army knew.

In determining whether Birch has established the third element of her *prima facie* case, I rely on the following facts. Birch graduated from high school in 1949. With the exception of a one year gap (June 1961–August 1962) and the eight-years in which she attended college (1967–1975), Birch worked continuously from 1949 until she was fired from the Camp Lejeune medical librarian position in December 1976. Pl.'s Resp. Mot.Summ.J., Ex. G, Attachment 1 (Employment History). From 1955 forward, she worked for various branches of the United States Armed Services. There is no evidence of unsatisfactory work performance until Camp Lejeune.

Birch began her work at the Camp Lejeune hospital in February 1976, after leaving a similar position at the Naval Regional Medical Center in Memphis.[3] *Id.* In September 1976, Birch filed an administrative action claiming she had been denied several employee benefits because of her sex. *See Birch v. Lehman*, 677 F.2d 1006, 1007 (4th Cir.1982). In December 1976, she was fired. She contends the Navy fired her in retaliation for her administrative complaint; the reason proffered by the Navy was "poor work performance." *Id.* Birch continued with her administrative claim after her termination and the case lived on, in some form or another, at least until 1989. *See* citations, *supra* n. 1.

Notwithstanding her 13 years of employment with the military, Birch never worked again after 1976. She claims she applied, and was rejected, for over 200 positions. Pl.'s Resp.Def.'s Mot.Summ.J. at 8, *id.* at Ex. G. Defendant Department of the Army rejected Birch at least one other time during this period, under circumstances indicating it knew of her history with the Navy at Camp Lejeune. *See id.*, Ex. G, Attachments 3, 5, 7 (correspondence regarding Army's rejection of Birch's application for voluntary medical library position at Health Services Command, Fort Sam Houston, Texas). It is apparent the Navy shared Birch's file with the Army; the Civilian Personnel Officer at Fort Sam Houston wrote Birch he was rejecting her application because her "Official Personnel Folder" disclosed she was fired from her medical librarian position at Camp Lejeune for "inefficiency." *Id.*, Attachment 5.

---

**2.** The precise order of events may be irrelevant. In *Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir.1993), for example, the Tenth Circuit held preemptive retaliation to fall within the scope of Title VII, stating "[adverse] action taken against an individual in anticipation of that person engaging in protected [activity] is no less retaliatory than action taken after the fact."

**3.** The circumstances of her departure from the Memphis facility are not evident from the record.

Viewing the evidence in the light most favorable to Birch, I find the fact Birch's Official Personnel Folder was available and reviewed by Department of the Army selection personnel at Fort Sam Houston probative of the fact Defendant Department of the Army was aware during the Fort Carson selection process at issue of the circumstances of Birch's 1976 termination and the protracted litigation in which she had been involved. This in turn creates an inference sufficient to satisfy the third element of a *prima facie* case that Birch's 13–year history of litigation against the Navy motivated Defendant to hire someone else for the Fort Carson position. Moreover, I find the fact Birch served as a civilian with various branches of the United States military for 13 years and then, after filing a discrimination action in 1976, was never hired again, to support an inference that protected activity and her nonselection for the Fort Carson position are causally related.

C. *Pretext.*

 Birch has established a *prima facie* case of retaliation under Title VII and, by Defendant's admission, a *prima facie* case of age discrimination under the ADEA. To survive summary judgment, however, Birch must also create a genuine question as to whether Defendant's proffered reason for hiring Szabo instead of her was a pretext for discrimination. *MacDonald,* 941 F.2d at 1122. This can be done by showing "either 'that a discriminatory reason more likely motivated the employer or … that the employer's proffered explanation is unworthy of credence.'" *Cone,* 14 F.3d at 530 (quoting *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095). I find Birch has made the requisite showing here.

Birch contends Defendant's proffered reason for hiring Szabo, i.e., that Szabo was better qualified, is mere pretext. In support Birch points out she had medical library experience, whereas Szabo had only general library experience; Birch had military experience, Szabo had none; and Birch's graduate degree was in library science, Szabo's was not. Pl.'s Resp.Mot.Summ.J. at 5. Birch maintains Lowther did consider her age in the selection process, and asserts Szabo received preferential treatment because of it.

In support, Birch submits a copy of the referral and selection register, forwarded as part of her application packet to Lowther, on which there are handwritten notations indicating Szabo's age as 34 and Birch's age "unknown." *See id.,* Ex. F. Defendant contends the ages were written on the form after Szabo was selected for the position, and maintains Lowther did not know or consider age during the selection process. Peggy Ridenour, a personnel specialist who processed the Szabo and Birch applications and the individual identified as having written the ages on the form, initially stated she wrote them in after Birch's Freedom of Information Act request dated September 1991. *Id.* In a Statement submitted as part of Defendant's Reply, however, Ridenour states she wrote in the ages during the course of the U.S. Army Civilian Appellate Review Agency Investigator's request in February 1990. Def.'s Reply, Ex. 13.

With respect to her claim Szabo received preferential treatment, Birch submits an affidavit signed by Szabo stating she met with Capt. Lowther at Fort Carson Evans Community Hospital "for an interview" before she was selected for the position, and that "the interview lasted approximately one-half hour to one hour." Pl.'s Resp.Mot.Summ.J., Ex. B. Lowther neither interviewed nor met with Birch during the selection process because Birch was in North Carolina.

In a later affidavit prepared for the Defendant, Szabo equivocates on her story, stating she "did not go to the Evans Community Hospital for an interview," but rather to "see the facility and discuss its library functions with as many of its personnel as possible." Def.'s Reply, Ex. 10 at ¶ 7. She contends she was "uncomfortable" with the word " 'interview' " as it was used in her first affidavit, and implies that affidavit misrepresents her version of the facts. Nevertheless, Szabo signed the first affidavit, and both Szabo and Defendant admit Lowther spoke with Szabo before the selection and not with Birch.

Defendant maintains this meeting was nothing more than a chance "encounter" and

denies Lowther "made any judgments" as to the candidates' respective qualifications as a result of it. *See* Mem.Supp.Mot.Summ.J. at 2–3. Lowther's own testimony contradicts this statement, however. At the EEOC hearing on Birch's claims, Lowther testified she selected Szabo for the job in part because Szabo was "better at communicating" than Birch. Pl.'s Resp.Mot.Summ.J., Ex. C at 160. It can be inferred from this statement that Szabo did gain an advantage by having been permitted to speak with Lowther during the selection process when Birch was not.

I find Defendant's proffered reasons for selecting Szabo over Birch, as well as its overall assertion that Birch was not discriminated against, turn on the credibility of Capt. Lowther and, to a lesser degree, Ms. Ridenour. Summary judgment is improper under these circumstances. *See Nat'l Aviation Underwriters v. Altus Flying,* 555 F.2d 778, 784 & n. 14 (10th Cir.1977). As the Tenth Circuit stated in *Nat'l Aviation,* affidavits and deposition testimony are not a substitute for trial. A witness's demeanor may serve as real evidence to persuade a factfinder to accept or reject his testimony. For this reason, I find Birch has raised a genuine issue of material fact regarding Defendant's articulated reasons for her nonselection and deny Defendant's motion for summary judgment.